**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

CLAIRE LaROCCO,

                Plaintiff,

v.                                CIVIL ACTION NO.  5:08-cv-00205

OLD REPUBLIC INSURANCE COMPANY and
OHIO CASUALTY INSURANCE COMPANY,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are the parties' motions for summary judgment: Defendant Old Republic Insurance Company's Motion for Summary Judgment [Docket 51]; Defendant Ohio Casualty Insurance Company's Motion for Summary Judgment [Docket 53]; Plaintiff Claire LaRocco's Motion for Summary Judgment Against Defendant Old Republic Insurance Company [Docket 55]; and Plaintiff's Motion for Summary Judgment Against Defendant Ohio Casualty Insurance Company [Docket 58].  Also pending is Defendant Old Republic Insurance Company's Motion to Strike, or in the Alternative, to Limit, Expert Report of Peter J. Hildebrand [Docket 47].

*I.  BACKGROUND*

This is a declaratory judgment action by Plaintiff Claire LaRocco against two insurance companies, Defendants Old Republic Insurance Company (Old Republic) and Ohio Casualty Insurance Company (Ohio Casualty), regarding insurance coverage for injuries Plaintiff sustained

in an automobile accident.[1]  The relevant factual background of this action is not in dispute.  On January 12, 2008, near the city of St. Mathews, South Carolina, Plaintiff was riding as a passenger in an automobile owned and driven by her husband, Samuel LaRocco.  A car overtaking the LaRocco's vehicle attempted to merge into the LaRocco's lane of travel before it had fully passed. Plaintiff's husband swerved to avoid a collision.  The vehicles did not make contact, but Plaintiff's husband lost control of the car, which crashed on the roadside and rolled several times.  Plaintiff's injuries were severe.  The driver of the car that caused the accident did not stop and has not been identified.

The vehicle in which Plaintiff was riding was insured by the State Farm Insurance Company (State Farm).  Plaintiff submitted a claim to State Farm under the policy's uninsured motorists provision.  State Farm honored the claim up to the policy limit and is not a party to this action. Plaintiff states, however, that the State Farm coverage was insufficient to compensate her for her injuries and medical expenses.

Plaintiff subsequently submitted an additional claim for uninsured motorists benefits under commercial insurance policy OML 02004606 (Old Republic Policy or OML 02004606) issued by Old Republic.  The Old Republic Policy's Commercial Auto Coverage Part generally provides automobile liability, collision, and related insurance coverage to LaRocco Enterprises Inc. (LaRocco Enterprises) and four other business entities.  Plaintiff is the President-Treasurer and Board Chairperson of LaRocco Enterprises, but she was not acting within the scope of her duties at the time of the accident.  Old Republic denied the claim on the grounds that Plaintiff was not covered

---

[1]  The Court exercises jurisdiction over this case pursuant to 28 U.S.C. § 1332.  There is complete diversity among the parties and the amount in controversy exceeds $75,000.

by the Commercial Auto Coverage Part at the time of the accident.  Plaintiff now seeks a declaration that Old Republic wrongfully denied her claim.

Plaintiff also seeks a declaratory judgment against Ohio Casualty.  Ohio Casualty issued Commercial Umbrella Policy Number UUO(08)52952666 (Umbrella Policy) to LaRocco Enterprises.  The Umbrella Policy generally provides excess or umbrella coverage for losses not fully covered by the Old Republic policy.  Ohio Casualty denies that Plaintiff is entitled to coverage under the Umbrella Policy.

After extensive discovery, the parties filed the pending motions for summary judgment. Plaintiff seeks a declaration that her claims for coverage should be honored by Old Republic and Ohio Casualty.  The insurance company defendants deny that Plaintiff is entitled to coverage under their respective policies and seek summary judgment to that effect.  These motions have been fully briefed and are ripe for the Court's consideration.  There appear to be no material facts in dispute, and the only questions before the Court concern to what extent, if any, Plaintiff was covered under the Old Republic Policy's Commercial Auto Coverage Part and the Umbrella Policy at the time of the accident.

A.    *Old Republic Policy's Commercial Auto Coverage Part*

The Commercial Auto Coverage Part is a part of a larger commercial insurance policy, which also includes separate coverage parts for crime, general liability, inland marine, and property.  The Old Republic Policy is issued in the name of "LaRocco Enterprises, Inc., et al."  (Docket 51-1.)  It contains a common declarations page, followed by endorsements presumably applicable to the entire policy.  The Named Insured endorsement defines the term as applying solely to LaRocco Enterprises

3

and four other named business entities. The individual coverage parts follow the general endorsements, each with their own declarations pages, policy terms, and endorsements.

The Commercial Auto Coverage Part is the second coverage part in the Old Republic Policy. The Named Insured for the Commercial Auto Coverage Part is listed in the Declarations as "LaRocco Enterprises, Inc., et al." However, the terms "et al." and "Named Insured" are not expressly defined within the Commercial Auto Coverage Part. Plaintiff's name appears in the Schedule section of an endorsement to the Commercial Auto Coverage Part titled Drive Other Car Coverage–Broadened Coverage for Named Individuals (Drive Other Car endorsement). The Drive Other Car endorsement makes several changes to the Commercial Auto Coverage Part, including providing uninsured motorists coverage up to a policy limit of $1 million. Of interest to the case at hand is the change it makes to the scope of the Commercial Auto Coverage Part's uninsured motorists coverage. The change, the meaning of which is sharply disputed, extends uninsured motorists coverage to Plaintiff "while 'occupying' or while a pedestrian being struck by any 'auto' you don't own except: Any 'auto' owned by that individual or by any 'family member.'" (Docket 55-1 at CA 99 10 09 02.)[2] Plaintiff contends that she is a Named Insured under the Commercial Auto Coverage Part generally and that the Drive Other Car endorsement excludes her from uninsured motorists coverage only if her car, or a car owned by a family member, is the at-fault uninsured vehicle. Old Republic disagrees on both points, arguing that Plaintiff is not a Named Insured in the Commercial Auto Coverage Part and that coverage is excluded under the Drive Other

---

[2]  The insurance policies at issue are not paginated in a regular fashion. Citations will be to the identifying marks on the footer of the page cited, although several pages occasionally share the same mark.

Car endorsement if Plaintiff is riding in her or a family member's car when she is struck by an uninsured motorist.

       B.     *Ohio Casualty Umbrella Policy*

      The Named Insured on the Umbrella Policy, which provides $5 million in excess or umbrella coverage, is "LaRocco Enterprises Inc."  Under the Umbrella Policy, Ohio Casualty is responsible for certain losses incurred by LaRocco Enterprises for which the Old Republic insurance policies do not provide full compensation.  Coverage is extended to LaRocco Enterprises' "executive officers," such as Plaintiff, "but only while acting within the scope of their employment."  (Docket 53-4 at CU 60 02 06 97.)  The Umbrella Policy's automobile coverage applies to the "use . . . of any 'autos'" to the extent that coverage "is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such underlying policies." (*Id*.; *see also id.* at CU 61 06 06 97.)  The Old Republic Policy is listed on the Umbrella Policy's Schedule of Underlying Insurance.

      The Umbrella Policy also contains a so-called drop-down provision.  Plaintiff reads this provision to mean that if the Court finds that Plaintiff is not entitled to coverage under the Commercial Auto Coverage Part, then she is covered by the Umbrella Policy's drop-down provision for any damages, up to $5 million, in excess of the policy limit for her State Farm insurance policy. Ohio Casualty disagrees, arguing that Plaintiff is not entitled to coverage under the Umbrella Policy in any event.

              *II.  SUMMARY JUDGMENT STANDARD*

      Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Summary judgment is inappropriate

if there exist factual issues that reasonably may be resolved in favor of either party.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In ruling on a motion for summary judgment, a

district court must review the motion and determine from the facts it has before it whether the

moving party is entitled to judgment as a matter of law.  *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d

410, 416 (4th Cir. 1993).

    "In deciding whether there is a genuine issue of material fact, the evidence of the nonmoving

party is to be believed and all justifiable inferences must be drawn in its favor."  *Am. Legion Post*

*v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001).  A mere scintilla of proof, however, will not

suffice to prevent summary judgment; the question is "not whether there is literally no evidence, but

whether there is any upon which a jury could properly proceed to find a verdict for the party"

resisting summary judgment. *Anderson*, 477 U.S. at 251.  "[A] complete failure of proof concerning

an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

*Celotex Corp.*, 477 U.S. at 323.

    Under West Virginia law,[3] the "determination of the proper coverage of an insurance contract

when the facts are not in dispute is a question of law."  Syl. pt. 2, *Tackett v. Am. Motorists Ins. Co.*,

584 S.E.2d 158 (W. Va. 2003).  All parties to this action are in agreement that there are no material

facts in dispute.  The only questions before the Court in this matter are whether Plaintiff is entitled

to insurance coverage under either or both of the insurance policies issued by Old Republic and Ohio

Casualty.  These are questions of law.  Accordingly, this case is ripe for summary adjudication.

---

[3]  The parties agree that the law of West Virginia applies to the insurance contracts at issue here.

*III.  COVERAGE UNDER THE OLD REPUBLIC POLICY*

Plaintiff advances a number of arguments based on the text and structure of the insurance contract and West Virginia law in support of her claim that she is entitled to coverage under the Old Republic Policy's Commercial Auto Coverage Part.  More specifically, she claims that she is a Named Insured of the Old Republic Policy; that the Drive Other Car endorsement extends coverage to her under the circumstances of the accident; that Old Republic failed to make a commercially reasonable offer of uninsured motorists coverage; and that Old Republic should be estopped, or has waived, its coverage defenses.  These arguments will be addressed in turn.

A.     *Named Insured Definition*

The interpretation of the Old Republic Policy's language is governed by West Virginia law. Questions concerning whether a claim is covered by an insurance policy should be resolved by looking to "the specific wording of the policy itself."  *Keefer v. Ferrell*, 655 S.E.2d 94, 99 (W. Va. 2007).  The words used in the policy should be given their plain and ordinary meanings.  Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 345 S.E.2d 33 (W. Va. 1986).  "Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed."  *Id.* (quoting Syl. pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639 (W. Va. 1985)); *see also Jenkins v. State Farm Mut. Auto. Ins. Co.*, 632 S.E.2d 346, 351 (W. Va. 2006) ("It is only when policy language is ambiguous that the insured is entitled to a liberal reading of the policy.").  The Court must "read policy provisions to avoid ambiguities and not torture the language to create them."  *Pilling v. Nationwide Mut. Fire Ins. Co.*, 500 S.E.2d 870, 872 (W. Va. 1997) (quoting *Payne v. Weston*, 466 S.E.2d 161, 166 (W. Va. 1995)).  Ambiguity is not created merely because there is a good faith

7

disagreement among parties as to the meaning of the contract. *Id.* But where the policy's terms are found to be ambiguous, the ambiguities are strictly construed against the insurance company and all doubts are resolved in favor of coverage. Syl. pt. 3, *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W. Va. 1998); *see also Nat'l Mut. Ins. Co. v. McMahon & Sons*, 356 S.E.2d 488 (W. Va. 1987) (holding that ambiguous insurance contract terms should be construed to conform with the insured's "reasonable expectations of coverage").

Plaintiff and Old Republic disagree whether Plaintiff is a Named Insured on the Old Republic Policy. It is necessary at the outset to clarify a misconception about the structure of the Old Republic Policy. Plaintiff refers throughout her complaint and briefing to the "Business Auto Policy." This is a misnomer. There is but one policy issued by Old Republic, which is designated OML 02004606. As the policy states on its declarations page, "This policy consists of the following coverage parts for which a premium is indicated." (Docket 51-1 at CPP DEC 0000 05 09.) Following this sentence is a list: Commercial Auto Coverage Part; Commercial Crime Coverage Part; Commercial General Liability Coverage Part; Commercial Inland Marine Coverage Part; and Commercial Property Coverage Part. (*Id.*) The coverage parts follow the common policy declarations and endorsements in the commercial insurance package. The coverage parts have their own declarations, conditions, and endorsements, but they share one important detail: they each bear the policy number OML 02004606. (*See, e.g.*, Docket 51-1 at CA DEC GN 003 04 06.) In sum, the coverage parts, including the so-called Business Auto Policy, are attached to the common policy declarations and bear the same policy number. They are constituent parts of one policy, OML 02004606, not separate policies. Thus, it is inaccurate to refer to the Commercial Auto Coverage

Part as the Business Auto Policy.  This distinction is not merely semantic; it has important consequences.

Plaintiff's argument is based on the premise that the term Named Insured, as it is used in the Commercial Auto Coverage Part, is ambiguous because "this term (Named Insured) is not defined anywhere in the *Policy*."  (Docket 56 at 6 (emphasis added).)  Plaintiff's use of "Policy" refers only to the Commercial Auto Coverage Part, not to the Old Republic Policy in its entirety.  If the "Policy" is viewed correctly as the common policy declarations and endorsements and the coverage parts, Plaintiff's premise is false: Named Insured is defined on the third page of the Old Republic Policy.

Following the Old Republic Policy's common policy declarations are endorsements applicable to the insurance package.  The first of these endorsements is the Named Insured endorsement, which states, "This endorsement . . . forms a part of Policy No. OML 02004606 of the Old Republic Company."  (Docket 51-1.)  It states further: "It is agreed the Named Insured is completed in its entirety as follows: Larocco Enterprises, Inc.[;] Greenbrier Architectual [sic] Woodwork[;] Stellar Holdings, LLC[;] The Construction Guild, LLC[:] CJ Leasing, Inc." (*Id*.) The intent of the Named Insured endorsement is unambiguous: the term Named Insured is defined in the Old Republic Policy as LaRocco Enterprises and the other listed business entities.

Named Insured is used throughout the Old Republic Policy with the "N" and the "I" capitalized to indicate that it is a defined term.  It is a common practice in the insurance industry to issue a policy containing several coverage parts with the Named Insured defined but once, in the common policy declarations or endorsements.  The term is then used throughout each of the coverage parts and the first letters are capitalized to indicate that the term is defined.  This does not make the use of the term Named Insured in the various coverage parts inherently ambiguous.  *Cf.*

*Fabri v. Hartford*, 69 F. App'x 187 (4th Cir. 2003) (unpublished disposition); *Wyner v. N. Am. Specialty Ins. Co.*, 78 F.3d 752 (1st Cir. 1996); *Bender v. Glendenning*, 632 S.E.2d 330 (W. Va. 2006). Furthermore, looking to the common policy endorsements for the definition of a defined term like Named Insured is consistent with the rule in West Virginia that "[t]he meaning of a word . . . is to be ascertained from a reading of the entire contract." *Legg v. Johnson, Simmerman & Broughton, LC*, 576 S.E.2d 532, 537 (W. Va. 2002); *see also Barber v. F. & M. Ins. Co.*, 16 W. Va. 658, 675 (1880) (noting the "fundamental principle in the construction of contracts, that all the provisions shall be taken into consideration, and reconciled, if possible, so that the true intent of the parties to the contract may be ascertained").

Plaintiff does not aver that the Named Insured endorsement is ambiguous. Rather, she maintains that the use of the term Named Insured in the Commercial Auto Coverage Part is ambiguous. The Business Auto Declarations page refers to the Named Insured as "LaRocco Enterprises, Inc., et al." (Docket 51-1 at CA DEC GN 003 04 06.) The ambiguity, according to Plaintiff, arises from the use of "et al." Because Plaintiff contends that the term Named Insured is not defined in the Commercial Auto Coverage Part, she argues that "et al." must be given the broadest construction possible, one which includes her. Nevertheless, the Court will not construe terms that can be applied. *See* syl. pt. 1, *Soliva*, 345 S.E.2d 33. The Court will apply the term Named Insured as it is defined in the Old Republic Policy: "It is agreed the Named Insured is completed in its entirety as follows: Larocco Enterprises, Inc.[;] Greenbrier Architectual [sic] Woodwork[;] Stellar Holdings, LLC[;] The Construction Guild, LLC[:] CJ Leasing, Inc." (Docket 51-1.) The use of "et al." in the Business Auto Declarations does not make the term Named Insured

10

ambiguous; rather, it refers to the four business entities listed after LaRocco Enterprises in the Named Insured endorsement.

Although the term Named Insured is not patently ambiguous as it is used in the Commercial Auto Coverage Part, it bears highlighting that the Named Insured endorsement is referenced in the Business Auto Declarations. In capital letters in the footer of the Business Auto Declarations page is the following statement: "These declarations and the common policy declarations, if applicable, together with the common policy conditions, coverage form(s) and endorsements, if any, issued to form a part thereof, complete the above numbered policy." (Docket 51-1 at CA DEC GN 003 04 06.) Thus, the common policy endorsements, including the Named Insured endorsement, are incorporated by reference into the Commercial Auto Coverage Part.

The Court **FINDS** that Plaintiff is not a Named Insured of the Old Republic Policy. As such, she is not entitled to the broad coverage the policy provides to Named Insureds. If she is covered by any parts of the Old Republic Policy, such coverage must be extended expressly to Plaintiff as an insured. Plaintiff maintains that the Drive Other Car endorsement extends coverage to her.

    B.    *Drive Other Car Endorsement*

The interpretation of the Drive Other Car endorsement's language is governed by the standards outlined in the previous section. Plaintiff and Old Republic have arrived at substantially different interpretations of the Drive Other Car endorsement's changes to the Commercial Auto Coverage Part's uninsured motorists coverage, which are as follows:

**Changes in Auto Medical Payments and Uninsured and Underinsured Motorists Coverages**

The following is added to **Who is Insured**:

11

Any individual named in the Schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member".

(Docket 55-1 at CA 99 10 09 02 (emphasis in original).)   This section will be referred to hereafter as the UM Provision.

According to Plaintiff, the UM Provision excludes uninsured motorists coverage under either of two circumstances: (1) if Plaintiff is struck by an uninsured vehicle owned by her or a family member or (2) if Plaintiff is riding as a passenger in her or a family member's uninsured vehicle when the driver causes an accident.[4]  Plaintiff asserts that the purpose of the UM Provision is to specify that "the insured's *own vehicle* can not be the uninsured vehicle."  (Docket 56 at 12 (emphasis in original).)  Old Republic reads the provision differently, arguing that Plaintiff is afforded uninsured motorists coverage while riding in any car not owned by LaRocco Enterprises with one exception: Plaintiff is not covered if she is in a vehicle owned by her or a family member at the time of an accident.

The UM Provision doubtlessly could have been drafted in a simpler manner, and it does a disservice to several basic rules of grammar, but simplicity and grammatical correctness are not the standards by which ambiguity is judged.  Ambiguity exists "whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning."  Syl. pt. 1, *Prete v. Merch. Prop. Ins. Co.*, 223 S.E.2d 441 (W. Va. 1976).  Giving the language of the UM Provision its ordinary meaning, as supplemented by the policy's definitions, the Court can identify no patent

---

[4]  The scope of coverage for accidents in which the insured is a pedestrian is not at issue here.

ambiguities in its terms.  One and only one reasonable interpretation of the scope of uninsured

motorists coverage is evident.

The parties' contrary interpretations of the UM Provision flow largely from the different

meaning the parties attribute to the word "you" in the following wording: "Any individual named

in the Schedule and his or her "family members" are "insured" while "occupying" or while a

pedestrian when being struck by any "auto" *you* don't own . . . ."  (Docket 55-1 at CA 99 10 09 02

(emphasis added).)  "You" is defined in the Commercial Auto Coverage Part: "Throughout this

policy the words "you" and "your" refer to the Named Insured shown in the Declarations."  (Docket

55-1 at CA 00 01 03 06.)  The Named Insured is listed in the Declarations as "LaRocco Enterprises,

Inc., et al."  (Docket 55-1 at CA DEC GN 0003 04 06.)  As was discussed previously, the term

"Named Insured" refers to LaRocco Enterprises and several related business entities for all coverage

parts of the Old Republic Policy.  It does not refer to Plaintiff or any other individual.  However,

under Plaintiff's view that she is a Named Insured under the policy, the term "you" in the UM

Provision refers to her as an individual.  It would follow that "Plaintiff" could be substituted for

"you" in the UM Provision so that Plaintiff would be covered by the policy's uninsured motorists

coverage "while 'occupying' or while a pedestrian when being struck by any "auto" [Plaintiff does

not] own except: Any 'auto' owned by [Plaintiff] or by any 'family member'."  Construing the

provision in this manner, Plaintiff concludes that the UM Provision provides uninsured motorists

coverage to her in every instance except when her car, or a car owned by family a member and in

which she is a passenger, is the at-fault uninsured vehicle.[5]  In this case, because the at-fault

---

[5] In Plaintiff's words,

(continued...)

13

uninsured vehicle was driven by an unidentified third party, Plaintiff concludes that the UM Provision does not operate to exclude uninsured motorists coverage under the Commercial Auto Coverage Part.

Plaintiff provides no explanation for how the language of the UM Provision leads to her conclusions about its meaning. Such an explanation would have to account for each of Plaintiff's conclusions about the meaning of the language: (1) that coverage is excluded if the insured is struck by an uninsured vehicle owned by her or a family member and (2) that coverage is excluded if the insured is occupying her or a family member's own uninsured vehicle as a passenger when the driver of the vehicle causes an accident. (Docket 56 at 12.) The Court can conceive of two explanations, however implausible, for how the language of the UM Provision could be read in such a manner as to support Plaintiff's conclusions.

First, Plaintiff's reading of the UM Provision would potentially lead to the conclusions she has reached if a word were added. If the word "uninsured" were inserted into the exclusionary portion of the UM Provision, then it would provide coverage for Plaintiff "while 'occupying' or while a pedestrian when being struck by any 'auto' . . . except : Any [*uninsured*] 'auto' owned by [Plaintiff] or by any 'family member.'" Construed in this manner, the text of the UM Provision would support Plaintiff's arguments about its meaning because the provision would expressly

---

[5](...continued)
> Clearly, Old Republic intended to provide that an insured can not be "struck" by an uninsured vehicle that she (or a family member) owns and then use Old Republic's uninsured motorists coverage as substitute liability coverage for herself or her family member. Likewise, Old Republic has sought to prohibit this practice when a person is "occupying" her (or a family member's) own uninsured vehicle as a passenger and the driver of that vehicle causes a wreck.

(Docket 56 at 12.)

exclude coverage if the vehicle which the insured occupied, or was struck by, was both uninsured and owned by the insured or her family member. This is an untenable reading of the UM Provision, however, because "in interpreting a contract, it is not the Court's function to speculate 'concerning what the parties meant to express or should have expressed,' nor is it the right or the province of the Court to alter or amend the contract." *United States v. Marietta Mfg. Co.*, 339 F. Supp. 18, 23 (S.D. W. Va. 1972) (Christie, J.) (quoting *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626, 631 (W. Va. 1962)); *see also Leckie v. Bray*, 113 S.E. 746, 747 (W. Va. 1922) (noting that courts have "no authority for any addition to the terms of a written instrument, or transposition or modification thereof").

Second, Plaintiff's interpretation of the UM Provision could be justified if parts of the UM Provision were disregarded. Unlike adding words to the contract, disregarding portions of the UM Provision is not inherently impermissible because it can be accomplished without effecting a material change to the meaning of the contract. The UM Provision applies to two factual circumstances: when the insured is occupying an automobile and being a pedestrian. These two circumstances are separated in the UM Provision by the conjunction "or." The language following the conjunction and applying only to circumstances when the insured is a pedestrian can be disregarded without materially changing the meaning of the provision with respect to coverage when the insured is occupying an automobile. However, care must be taken that all of the words applying exclusively to pedestrian coverage are disregarded and, conversely, that no more words of the provision than necessary are disregarded.

Plaintiff's conclusions about the UM Provision may be valid if some, but not all, of the words applying to the pedestrian coverage are disregarded. If the phrase "or while a pedestrian" in

15

the UM Provision is disregarded, the UM Provision would state: "[Plaintiff] and his or her 'family members' are 'insured' "while 'occupying' . . . when being struck by any 'auto' [Plaintiff does not] own except: Any 'auto' owned by [Plaintiff] or by any 'family member.'"  Read in this manner, Plaintiff would be entitled to uninsured motorists coverage while she is engaged in the act of "occupying" if she is "struck by" any vehicle she does not own.  The exclusionary language at the end of the provision—i.e., "except: Any 'auto' owned by [Plaintiff] or by any 'family member'"—would then operate to exclude any automobile owned by Plaintiff or a family member from the class of "autos" that may strike Plaintiff.  Consequently, Plaintiff would be entitled to uninsured motorists coverage for the accident in this case because the striking vehicle was not owned by her or a family member.  However, adopting an interpretation of the UM Provision that disregards only the words "or while a pedestrian" would be unreasonable.

Common sense suggests that the entire phrase following the conjunction is "or while a pedestrian when being struck by."  If the phrase is truncated after "while a pedestrian," as in "[Plaintiff] and . . . her 'family members' are 'insured' while 'occupying' . . . when being struck by any 'auto,'" then the verb "occupying" has no direct object.  What is it that Plaintiff must be occupying in order to be eligible for uninsured motorists coverage?  "Occupying" is not defined in the Common Policy Conditions or Commercial Auto Coverage Part, but it is defined elsewhere in the West Virginia Uninsured and Underinsured Motorists Coverage endorsement as "in, upon, getting in, on, out or off." (Docket 55-1 at CA 21 22 03 06.)  The ordinary meaning of "occupying" is "to take up (a place or extent in space)."  Merriam-Webster's Collegiate Dictionary 804 (10th ed.1993).  Whether "occupying" is given the definition assigned to it in the contract or its ordinary meaning, saying that an individual is "occupying" conveys no more information than that she is

existing in three dimensions.  The UM Provision's use of "occupying" is intelligible only if the pedestrian coverage phrase is, in it entirety, "or while a pedestrian when being struck by."  With the pedestrian coverage language excised in its entirety, the UM Provision reads as follows: "[Plaintiff] and . . . her 'family members' are 'insured' while 'occupying' . . . any 'auto.'"  Thus, "any auto" is the direct object of the verb "occupying" and it plainly may be understood that uninsured motorists coverage is provided when Plaintiff is occupying an automobile.

An additional reason why the UM Provision's pedestrian coverage wording cannot be limited to "or while a pedestrian" is that doing so creates surplusage.  Applying Plaintiff's interpretations of the UM Provision's terms, the language preceding "except" in the provision ("struck by any 'auto' you don't own") extends coverage to Plaintiff if she is struck by any automobile not owned by Plaintiff.  The language following "except" ("except . . . [a]ny 'auto' owned by [Plaintiff] or by any 'family member'") then excludes automobiles owned by Plaintiff from the class of automobiles not owned by Plaintiff.  Thus, the words "you don't own" preceding "except" are rendered surplusage.  This is a result to be avoided, as "[c]ontract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage."  *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993).

Old Republic's reading of the UM Provision is decidedly less convoluted.  Old Republic contends that "you" in the UM Provision refers to LaRocco Enterprises and the other business entities referenced in the Named Insured endorsement.  The phrase "Any individual named in the Schedule" refers to Plaintiff and the two other individuals named in the Drive Other Car endorsement.  Thus, according to Old Republic, the UM Provision reads as follows: "[Plaintiff] and

17

. . . her 'family members' are 'insured' while 'occupying' or while a pedestrian when being struck by any 'auto'[LaRocco Enterprises does not] own except: Any 'auto' owned by [Plaintiff] or by any 'family member.'"  Old Republic's position also accepts that the pedestrian phrase, in its entirety, is "or while a pedestrian when being struck by."  With the pedestrian coverage language disregarded, the UM Provision would state: "[Plaintiff] and . . . her 'family members' are 'insured' while 'occupying' . . . any 'auto'[LaRocco Enterprises does not] own except: Any 'auto' owned by [Plaintiff] or by any 'family member.'" This reading of the UM Provision is consistent with the other parts of the contract, namely the distinction between the terms "Named Insured" and "insured," and it requires no awkward manipulation of the provision's wording or structure.

When read appropriately, there is no uncertainty in the meaning of the UM Provision.  The language preceding the exclusionary language ("[Plaintiff] and . . . her 'family members' are 'insured' while 'occupying' . . . any 'auto'[LaRocco Enterprises does not] own") provides that Plaintiff is entitled to uninsured motorists coverage when she is occupying any vehicle not owned by LaRocco Enterprises.  The exclusionary language ("except: Any 'auto' owned by [Plaintiff] or by any 'family member'") carves out an exception to the class of automobiles not owned by LaRocco Enterprises for which Plaintiff is entitled to coverage while occupying.  If Plaintiff is occupying an automobile not owned by LaRocco Enterprises, but owned by her or a family member, then she is entitled to no uninsured motorists coverage under the UM Provision.

As described in detail above, there are two competing interpretations of the scope of the uninsured motorists coverage under the UM Provision in this case: Plaintiff's and Old Republic's. However, the parties' disagreement about the policy's meaning does not make its terms ambiguous. *Pilling*, 500 S.E.2d at 872.  As the Supreme Court has observed, "[W]hile 'there is little doubt that

18

imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question,' because we are 'condemned to the use of words, we can never expect mathematical certainty from our language.'" *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (citations omitted).  A contract provision is not ambiguous simply because a party has offered an alternative interpretation of its meaning; rather, the hallmark of ambiguity is that there is more than one *reasonable* interpretation.  *See* Syl. pt. 1, *Prete*, 223 S.E.2d 441.  Upon considering the competing interpretations of the UM Provision proffered by the parties in this case, the Court is satisfied that Old Republic's interpretation comports with the terms of the policy as a whole, attributes the ordinary or defined meanings to the words used, and requires no torturing of the provision's language or structure.  Accordingly, the Court **FINDS** (1) that the UM Provision is not ambiguous, and (2) that Old Republic's interpretation of the scope of uninsured motorists coverage is the only reasonable interpretation of the contract language.

### C.    *Commercially Reasonable Offer*

Plaintiff argues that even if she is not afforded uninsured motorists coverage under the express terms of the policy, she is entitled to coverage by operation of law.  Plaintiff relies on West Virginia Code § 33-6-3, which requires that automobile insurance buyers be given the option to purchase uninsured motorists coverage.  *See Riffle v. State Farm Mut. Auto. Ins. Co.*, 410 S.E.2d 413, 415 (W. Va. 1991).  Section 33-6-31(b) obligates insurance companies issuing automobile insurance policies to

> provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

19

W. Va. Code § 33-6-31(b).  West Virginia's Supreme Court of Appeals has construed this section to mean that an insurer must make a commercially reasonable offer of uninsured motorists coverage with each automobile insurance policy it issues.  *Bias v. Nationwide Mut. Ins. Co.*, 365 S.E.2d 789, 791 (W. Va. 1987).  If the insurer fails to make a commercially reasonable offer of uninsured motorists coverage or fails to obtain a "knowing and intelligent waiver" of the coverage, then the coverage is included by operation of law.  Syl. pt. 4, *Jewell v. Ford*, 590 S.E.2d 704 (W. Va. 2003); *see also* Syl. pt. 2, *Bias*, 365 S.E.2d 789.  The insurer bears the burden of proving that uninsured motorists coverage was offered and properly rejected.  Syl. pt. 1, *Bias*, 365 S.E.2d 789.

Section 33-6-31(b) dictates that the amount of uninsured motorists coverage offered must be "up to an amount not less than" the limits for bodily injury liability and property liability contained in the policy.  W. Va. Code § 33-6-31(b).  According to the Supreme Court of Appeals, "This language clearly means that the minimum uninsured or underinsured coverage included in the insured's policy . . . is *an amount equal to* the bodily injury liability insurance and the property damage liability insurance actually purchased by the insured."  Syl. pt. 5, *Jewell*, 590 S.E.2d 704 (emphasis added).  Plaintiff and Old Republic disagree whether the phrase "an amount equal to" means that the coverages must be equal in their terms and conditions or equal in dollar amount. Plaintiff contends that uninsured motorists coverage must be provided in every circumstance where the insured would be covered under the bodily injury liability and the property damage liability provisions.  Old Republic attaches a different meaning to "an amount equal to," arguing that the uninsured motorists coverage need only match the policy limit dollar amounts for the bodily injury liability and the property damage liability provisions.  Old Republic reasons that because the phrase "an amount equal to" appears to refer to quantity, but not quality, section 33-6-31(b) does not

20

prohibit insurers from carving out exclusions to uninsured motorists coverage not found in the bodily injury liability and the property damage liability coverage.

Plaintiff and Old Republic agree that the Policy contains uninsured motorists coverage. The Policy indicates that uninsured motorists coverage is provided to the Named Insured for "[o]nly those 'autos' you own." (Docket 51-1 at CA DEC GN 0003 04 06; CA 00 01 03 06.) By contrast, liability coverage is extended to "[a]ny 'auto.'" (*Id.*). The policy limit for both types of coverages is $1 million.

As with other disputes in this case, Plaintiff and Old Republic's divergent views of whether there was a commercially reasonable offer of uninsured motorists coverage flow largely from their differing views of who is a Named Insured. Adhering to the position that she is a Named Insured, Plaintiff argues that she is entitled uninsured motorists coverage equivalent to the liability coverage provided to the Named Insured in the Old Republic Policy. Because liability coverage extends to "any auto," Plaintiff reasons that section 33-6-31(b) necessitates that she be afforded uninsured motorists coverage while she is occupying "any auto." Old Republic responds that section 33-6-31(b) is inapplicable here because the statute requires only that the amount of coverage under uninsured motorists coverage and liability coverage be equal in dollar amount, which they are.

The West Virginia Supreme Court of Appeals has not determined whether section 33-6-31(b) requires that uninsured motorists coverage be offered with terms and conditions equivalent to liability coverage. This Court is reluctant to opine on an outstanding question of state law when the matter may be decided on other grounds. Even if Plaintiff is correct in her assertion that West Virginia law requires equivalent uninsured motorists coverage, Old Republic has satisfied its statutory obligations with respect to Plaintiff.

As previously noted, Plaintiff is not a Named Insured of the Policy.  Thus, it is of little consequence to the disposition of this case that the uninsured motorists coverage provided to the Named Insured may be statutorily inadequate.  The source of Plaintiff's uninsured motorists coverage is the Drive Other Car endorsement.  The Drive Other Car endorsement's UM Provision provides uninsured motorist coverage to Plaintiff if she is occupying a car not owned by her or a family member or LaRocco Enterprises.  The Drive Other Car endorsement's "Changes in Liability Coverage" section contains restrictions similar to the UM Provision:

> Any "auto" you [LaRocco Enterprises] don't own, hire or borrow is a covered "auto" for Liability Coverage while being used by any individual named in the Schedule [Plaintiff] or by his or her spouse . . . except: Any "auto" owned by that individual or by any member of his or her household.

(Docket 51-1 at CA 00 1- 09 02.)  The Changes in Liability Coverage section, like the UM Provision, provides coverage to Plaintiff while she is occupying any automobile not owned by her, a family member, or Larocco Enterprises.  At the time of the accident, Plaintiff was a passenger in a car owned by her husband.  Therefore, she would not have been eligible for liability coverage under the Drive Other Car endorsement.

Section 33-6-31(b) requires that an insurer make a commercially reasonable offer of, or provide, uninsured motorists coverage in an amount equal to liability coverage.  The uninsured motorists coverage Old Republic provided to Plaintiff at the time of the accident was equal both in quantity ($1 million policy limit) and quality (same scope of coverage) to the liability coverage afforded to her under the same circumstances.  Likewise, the conditions were the same in the respect that Plaintiff would not be entitled to liability or uninsured motorists coverage under the circumstances in which the accident occurred.  Accordingly, the Court **FINDS** that Old Republic has fulfilled its duty under West Virginia Code § 33-6-31(b) with respect to Plaintiff.

22

D.        *Estoppel or Waiver of Coverage Defenses*

Plaintiff challenges the adequacy of Old Republic's claims handling and settlement procedures in this case, arguing that Old Republic should be estopped from asserting, or be found to have waived, its defenses to coverage.  Plaintiff faults Old Republic for denying her claim without conducting an adequate investigation.  She avers that Old Republic's investigation consisted of five telephone calls.  Old Republic did not review the accident report, photos of the damage to the vehicle, or Plaintiff's medical records.  Furthermore, Old Republic informed Plaintiff that it was denying her claim over a telephone call, without issuing a formal denial of claim letter.  Plaintiff urges the Court to hold that Old Republic is barred from denying coverage under either the estoppel or waiver theory.  Old Republic responds that it acted appropriately in denying the claim.

As a general rule, "the principles of waiver and estoppel are inoperable to extend insurance coverage beyond the terms of an insurance contract."  Syl. pt. 7, *Marlin v. Wetzel County Bd. of Educ.*, 569 S.E.2d 462 (W. Va. 2002) (quoting Syl. pt. 5, *Potesta v. U.S. Fid. & Guar. Co.*, 504 S.E.2d 135 (W. Va. 1998)).  The West Virginia Supreme Court of Appeals has recognized three exceptions.  An insurer may be prohibited from denying coverage (1) if it misrepresented the scope of coverage to an insured at the time the policy was issued; or (2) if the insurer represented the insured without a reservation of rights; or (3) if the insurer's actions are found to be in bad faith. *Id*. at syl. pt. 8.  These exceptions are not exhaustive, however.  The Supreme Court of Appeals has noted that additional exceptions may be warranted in situations where an insurer's actions have prejudiced the insured in some way.  *Id*.

As the Court found previously, the terms of the insurance contract between Plaintiff and Old Republic did not extend uninsured motorists coverage to Plaintiff under the circumstances of the

23

accident.  The doctrines of waiver and estoppel are creatures of equity; in the absence of wrongdoing by Old Republic, they cannot justify the extension of insurance coverage to situations not contemplated in the insurance contract.[6]  Plaintiff has not asserted, nor is there evidence in the record, that Old Republic misrepresented the scope of coverage to Plaintiff when it issued the Policy, represented Plaintiff without a reservation of rights, or acted in bad faith.  *Cf.* Syl. pt. 7, *Marlin*, 569 S.E.2d 462.  Thus, none of the exceptions to the rule that equity cannot create extra-contractual insurance coverage is applicable here.  There is no reason to recognize an additional exception to the rule because Plaintiff does not argue that Old Republic's claims handling procedures prejudiced her in any way.  Plaintiff's broad assertions that Old Republic's claims handling and settlement procedures were inadequate do not justify her appeal to equity.  Accordingly, the Court **FINDS** that Old Republic is not barred from denying coverage to Plaintiff under the equitable theories of estoppel or waiver.

## IV.  COVERAGE UNDER THE OHIO CASUALTY UMBRELLA POLICY

Plaintiff advances two arguments in support of her assertion that she is entitled to coverage under the Umbrella Policy.  First, she argues she is entitled to uninsured motorists coverage as a matter of law because the Umbrella Policy was issued without a commercially reasonable offer of uninsured motorists coverage.  Second, relying on the drop-down provision, Plaintiff claims that the Umbrella Policy provides primary uninsured motorists coverage to her if the Old Republic Policy does not.  For reasons that will become clear, the Court need only address the former argument in detail.

---

[6]  There are significant differences in how the theories of waiver and estoppel operate, *see* Syl. pt. 1, *Potesta*, 504 S.E.2d 135, but the differences are not important in this case.

24

A.      *Scope of Uninsured Motorists Coverage*

According to Plaintiff, the Umbrella Policy contains uninsured motorists coverage by operation of law.  The Umbrella Policy provides umbrella automobile liability coverage "to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance." (Docket 53-4 at CU 61 06 06 97.)  The Old Republic Policy is the only insurance policy listed in the Schedule of Underlying Insurance.  The Old Republic Policy's Business Coverage Form provides automobile liability coverage, and, therefore, so does the Umbrella Policy.  As an umbrella insurance policy containing automobile liability coverage, the Umbrella Policy must have been issued with a commercially reasonable offer of uninsured motorists coverage. W. Va. Code §§ 33-6-31(b); 33-6-31f(a).  Because the Umbrella Policy's uninsured motorists coverage offer form is blank, (Docket 53-4 at AO 70 19 08 01), Plaintiff asserts that the offer was not commercially reasonable and uninsured motorists coverage arises by operation of law.  Assuming this contention is correct, it means only that LaRocco Enterprises—the Named Insured on the Umbrella Policy—enjoys uninsured motorists coverage under the Umbrella Policy by operation of law.  It does not follow that the uninsured motorists coverage extends to Plaintiff.

The scope of uninsured motorists coverage provided by the Umbrella Policy is a function of West Virginia law and contract interpretation.  The obligation of insurers in West Virginia to offer uninsured motorists coverage in conjunction with automobile liability coverage applies in equal measure to excess or umbrella policies that contain automobile liability coverage. *Westfield Ins. Co. v. Paugh*, 390 F. Supp. 2d 511, 522 (N.D. W. Va. 2005) (construing W. Va. Code §§ 33-6-31(b), 33-6-31f(a)).  West Virginia law provides that "insurers issuing or providing liability policies that are of an excess or umbrella type and which are written to cover automobile liability shall offer

25

uninsured and underinsured motor vehicle coverage on such policies in an amount not less than the amount of liability insurance purchased by the named insured." W. Va. Code § 33-6-31f(a).  If the insurer fails to offer uninsured motorists coverage, such coverage is implied by law in an amount not less than the amount of automobile liability coverage.  Syl. pt. 4, *Jewell*, 590 S.E.2d 704.

Implied uninsured motorists coverage extends to the policy's insureds, as that term is defined in the insurance contract and by West Virginia statute.  Regarding who is an insured under the contract, "the specific wording of the policy itself," if unambiguous, will be given effect.  *Keefer*, 655 S.E.2d at 99; *see also* syl. pt. 1, *Soliva*, 345 S.E.2d 33; syl. pt. 2, *Shamblin*, 332 S.E.2d 639. Ambiguities in the contract are resolved against the insurer and in favor of coverage.[7]  Syl. pt. 3, *Murray*, 509 S.E.2d 1.  In addition to those persons named as insureds in the insurance contract, West Virginia law mandates that uninsured motorists coverage extend to certain persons, namely the named insured, his family members, and persons riding in vehicles covered by the policy.  W. Va. Code § 33-6-31(c); *see also Starr v. State Farm Fire & Cas. Co.*, 423 S.E.2d 922, 927–28 (W. Va. 1992).  Policy exclusions that restrict coverage for parties defined as insureds by section 33-6-31 are void ab initio.  Syl. pt. 1, *Deel v. Sweeney*, 383 S.E.2d 92 (W. Va. 1989).

Assuming Ohio Casualty failed to make a commercially reasonable offer of uninsured motorists coverage when it issued the Umbrella Policy, the policy contains uninsured motorists coverage by operation of law.[8]  The implied uninsured motorists coverage extends to any party

---

[7]  Ohio Casualty cites *Wylie v. Mountain Motors* for the proposition that the above rule of insurance contract interpretation does not apply if the term "insured" is the ambiguous term.  27 S.E.2d 494, 497–97  (W. Va. 1943).  *Wylie* is of questionable precedential value, however, as it has not been cited by a West Virginia court of record since it was decided over sixty years ago.

[8]  Ohio Casualty half-heartedly concedes this point.  (Docket 64 at 3.)

26

defined as an insured in the Umbrella Policy or in section 33-6-31.  However, Plaintiff is not an insured in either instance.

### (1)    *"Insured" as Defined by the Umbrella Policy*

Plaintiff is not an insured under the terms of the Umbrella Policy.  Unlike the Old Republic Policy, which was issued to several corporate entities, the sole Named Insured in the Umbrella Policy's declarations is "LaRocco Enterprises, Inc."  Plaintiff is not named in the policy.  Although "Insured" is given several definitions in the contract, none of those definitions were applicable to Plaintiff at the time of the accident:  In addition to the Named Insured, LaRocco Enterprises, the term "Insured" applies to "[a]ny of [LaRocco Enterprises'] partners, executive officers, directors, or employees but only while acting within the scope of their duties" and "[a]ny person . . . with respect to any 'auto' owned by you . . . and used with your permission."  (Docket 53-4 at CU 60 02 06 97.)  At the time of the accident, Plaintiff was not acting within the scope of her duties and was not occupying an automobile owned by LaRocco Enterprises.  Accordingly, Plaintiff was not a insured as defined in the Umbrella Policy.

Plaintiff also calls the Court's attention to an endorsement titled Auto Liability-Following Form.  This endorsement excludes the following from the Umbrella Policy: "Any liability arising out of the . . .use . . of any 'auto,' except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy."  (Docket 53-4 at CU 61 06 06 97.)  The Old Republic Policy is listed on the Schedule of Underlying Insurance.  Thus, according to Plaintiff, the scope of liability coverage under the Umbrella Policy is equal to the scope of liability coverage provided in the Old Republic Policy.  In other words, Plaintiff is an insured under Umbrella Policy because she is an insured under the Old

27

Republic Policy.  If Plaintiff is correct on this point, her argument would fail nevertheless.  The Court previously found that Plaintiff is not a Named Insured of the Old Republic Policy.  Plaintiff is not covered under Old Republic Policy's Commercial Auto Coverage Part except to the extent coverage is created by the Drive Other Car endorsement.  Under the Drive Other Car endorsement, and by extension the Old Republic Policy, Plaintiff did not have automobile liability or uninsured motorists coverage under the circumstances in which the accident occurred.  Because Plaintiff had no liability coverage for the accident under the Old Republic Policy, she cannot claim liability insurance under her interpretation of the Auto Liability-Following Form endorsement.  Further, because the Umbrella Policy provides no automobile liability insurance for Plaintiff for the accident, it need not provide uninsured motorists coverage for her.  *Cf.* W. Va. Code §§ 33-6-31(b); 33-6-31f(a).

Plaintiff puts forth an additional argument that she should be covered by the Umbrella Policy's implied uninsured motorists coverage even if she is not an "insured" under the terms of Umbrella Policy.  In short, Plaintiff contends that Ohio Casualty's failure to expressly exclude her from coverage necessitates that Ohio Casualty be estopped from claiming Plaintiff is excluded from the policy's implied uninsured motorists coverage.  She relies on three cases to support this argument: *Nat'l Mut. Ins. Co. v. McMahon & Sons*, 356 S.E.2d 488 (W. Va. 1987), *Roper v. State Auto. Mut. Ins. Co*, No. C-010117, 2002 WL 1389831 (Ohio Ct. App. June 28, 2002), and *Kremer v. White*, No. C-030802 (Ohio Ct. App. Nov. 19, 2004).  Drawing on language in *McMahon* stating that "[a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear," 356 S.E.2d at 496, Plaintiff concludes that the uninsured motorists coverage "must be added by operation of law [to the

Umbrella Policy] *without exclusion,*" (Docket 66 at 2 (emphasis in original)).  To this argument, Plaintiff adds citations to *Roper* and *Kremer*, which are decisions of the Ohio Court of Appeals interpreting an Ohio statute similar in effect to W. Va. Code § 33-6-31.  The relevant facts of *Roper* and *Kremer* are similar to each other, and to the case at hand.  In each case, a person was killed by an uninsured motorist.  Neither person was acting within the scope of their employment at the time of the accidents.  The decedents' estates sought to recover from the decedents' employers' commercial liability insurance carriers.  The insurance policies extended liability coverage to the employer's employees while they were acting within the scope of their employment, but neither policy contained the statutorily-mandated uninsured motorists coverage.  The courts found that such coverage was written into the policies by operation of Ohio law.  There were, unsurprisingly, no express exclusions in the policies that limited uninsured motorists coverage for employees.  The Ohio Court of Appeals held in each instance that the scope of the implied uninsured motorists coverage was not limited to the scope of the policies' liability coverage.  Thus, the decedent employees' estates could recover uninsured motorists benefits from their employers' commercial liability insurance policies notwithstanding that the employees were not acting within in the scope of their employment at the times of their death.

*Roper* and *Kremer* are closely analogous to the facts at hand, and Plaintiff's juxtaposition of these cases with disembodied fragments of *McMahon* is clearly an invitation for this Court to find that the holdings of *Roper* and *Kremer* are consistent with West Virginia law.  The West Virginia Supreme Court of Appeals has never taken the extraordinary step of holding that a commercial liability policy provides uninsured motorists coverage to a business's employees when they are driving their personal vehicles on personal errands—and for good reason.  It stretches credulity to

29

suggest that either a commercial insurer or a business purchasing insurance would contemplate such a result when bargaining the terms of a commercial insurance contract.  Furthermore, it would be an uncommon employee indeed who would expect his employer's commercial liability insurance to be a substitute for obtaining uninsured motorists coverage under his personal automobile insurance policy.  Only lawyers dream up such scenarios.

Hence, Plaintiff's assertion that Ohio Casualty's denial of her claim frustrates her reasonable expectation of coverage also is untenable.  Under the doctrine of reasonable expectations, any ambiguous terms of an insurance contract "will be given a construction which a reasonable person standing in the shoes of the insured would expect the language to mean."  *McMahon*, 356 S.E.2d at 495 (quoting *Soliva v. Shand, Morahan & Co.,* 345 S.E.2d 33, 35–36 (W. Va. 1986)).  What a reasonable person would expect a contract to mean may not be the same as what an aggrieved plaintiff wishes it to mean.  The rules of insurance contract interpretation, though they may be deferential to insureds, empower courts to give effect to reasonable expectations, but not wishes.[9] In this case, it was not reasonable for Plaintiff to expect her employer's commercial insurance policy to provide umbrella or uninsured motorists coverage for her while she was on a personal trip and riding in a personal automobile.

The judicial authority to reform an insurance contract to comply with the law, when coupled with the reasonable expectation doctrine, is a powerful tool for correcting inequities that may arise from the greater bargaining power and sophistication of most insurers in comparison to their

---

[9] Plaintiff's invocation of the reasonable expectations doctrine is misplaced for the additional reason that "[i]n West Virginia, the doctrine of reasonable expectations is limited to those instances . . . in which the policy language is ambiguous."  *McMahon*, 356 S.E.2d at 496.  No ambiguities have been identified in the Umbrella Policy.

insureds.  But it does not grant a licence to rewrite insurance contracts for the advantage of any party, no matter how sympathetic.  Reforming an insurance policy to include coverage for persons not contemplated by the parties to the insurance contract violates the maxim that "[w]here provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syl. pt. 2, *Shamblin*, 332 S.E.2d 639.  Likewise, reforming a contract in a manner not contemplated by the parties is contrary to the principle underlying *McMahon*: that insurance companies should not be permitted to employ "technical encumbrances or . . .  hidden pitfalls" to frustrate the named insured's "reasonable expectation of coverage under a policy."  356 S.E.2d at 496.  Lastly, and perhaps most importantly, the result reached by the courts in *Roper* and *Kremer* does not comport with the West Virginia statute at issue here.  Section 33-6-31(b) obligates insurers to "provide an option to *the insured* with appropriately adjusted premiums to pay *the insured* all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle." W. Va. Code § 33-6-31(b) (emphasis added).  The "insured," as it is used in section 33-6-31, means the "named insured, his or her spouse, and their resident relatives" and "permissive users of the named insured's vehicle."  *Starr*, 423 S.E.2d at 928 (citing W. Va. Code § 33-6-31(c)).  A person who is not a named insured, and who is driving his own vehicle on personal errands, is not an insured for the purpose of his employer's commercial liability policy under either of these statutory categories.  He becomes an insured only if a court rewrites the insurance policy, the applicable statute, or both.  This Court has neither the authority nor the inclination to take such extraordinary actions.

The Court **FINDS** that Plaintiff is not an "insured" as that term is used in the Umbrella Policy under the circumstances of the accident.

### (2)    "Insured" by Operation of West Virginia Code § 33-6-31

There are two classes of persons for whom each automobile insurance policy must include uninsured motorists coverage: (1) "the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise;" and (2) "any person . . . who uses, with the consent . . . of the named insured, the motor vehicle to which the policy applies." W. Va. Code § 33-6-31(c); *see also Starr*, 423 S.E.2d at 927–28. With respect to the first class, Plaintiff is not a named insured of the Umbrella Policy. The only named insured is LaRocco Enterprises. For obvious reasons, Plaintiff is not a spouse or relative of LaRocco Enterprises. Regarding the second class, Plaintiff was a passenger in a vehicle owned by her husband, not LaRocco Enterprises, at the time of the accident. The second class "consists of the permissive users of the named insured's vehicle." *Starr*, 423 S.E.2d at 928. Plaintiff is not a statutorily-mandated insured under either of the two classes. Accordingly, the Court **FINDS** that Plaintiff is not an "insured" of the Umbrella Policy by operation of law under the circumstances of the accident.

### B.    Drop-Down Provision

The drop-down provision is as follows:

**Retained Limit**

> We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:
>
> 1.    the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of

any other insurance providing coverage to the "insured" during the Policy Period;

or

2.  the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

(Docket 53-4 at CU 60 02 06 97.)  Plaintiff argues that this provision means that even if the Old Republic Policy does not cover her injuries, the Umbrella Policy will "drop down" to cover damages that exceed the policy maximum of her personal automobile insurance.  Because her personal automobile insurer, State Farm, paid on her claim up to the maximum amount of the policy, Plaintiff asserts that the "'drop down' clause triggers Ohio Casualty's duty to honor the claim of [Plaintiff] without awaiting the outcome of the Old Republic declaratory judgment claim." (Docket 59 at 13.) Ohio Casualty responds that the drop-down provision is inapplicable because Plaintiff is not an insured of the Umbrella Policy.

As discussed above, Plaintiff is not an insured of the Umbrella Policy by its terms or by operation of law.  The drop-down provision simply restricts the amount the Umbrella Policy will pay out to an insured who files a valid claim against the policy.  Plaintiff does not argue that the drop-down provision extends coverage to parties, such as herself, who are not defined as insureds elsewhere in the policy.  Therefore, the Court **FINDS** that Plaintiff is not entitled to recover proceeds from Ohio Casualty under the drop-down provision.

*V.  MOTION TO STRIKE EXPERT'S REPORT*

Old Republic moves to strike or limit the report of Ohio Casualty's expert witness, Peter J. Hildebrand.  Hildebrand discussed several matters that Old Republic finds objectionable, including what a claims professional would conclude when interpreting the Old Republic Policy and Umbrella Policy and what a claims professional would conclude about Old Republic and Ohio Casualty's claims handling procedures in this case.

The Court has decided the issues in this case by applying the law to undisputed facts.  In doing so, the Court has afforded little or no weight to the expert witness reports in the record.  If Hildebrand's testimony touches on inappropriate issues, as Old Republic maintains, the errors have had no influence on the outcome of the parties' motions for summary judgment.  Striking Hildebrand's testimony, or parts thereof, would be merely an academic exercise.  *Cf. MJ Harbor Hotel, LLC v. McCormick & Schmick Rest. Corp*., 599 F. Supp. 2d 612, 623 (D. Md. 2009); *Harper v. PSC*, 416 F. Supp. 2d 456, 461 n.5 (S.D. W. Va. 2006) (Stanley, M.J.).

*VI.  CONCLUSION*

For the reasons set forth above, Defendant Old Republic Insurance Company's Motion for Summary Judgment [Docket 51] is **GRANTED**; Defendant Ohio Casualty Insurance Company's Motion for Summary Judgment [Docket 53] is **GRANTED**; Plaintiff Claire LaRocco's Motion for Summary Judgment Against Defendant Old Republic Insurance Company [Docket 55] is **DENIED**; and Plaintiff's Motion for Summary Judgment Against Defendant Ohio Casualty Insurance Company [Docket 58] is **DENIED**.  Defendant Old Republic Insurance Company's Motion to Strike, or in the Alternative, to Limit, Expert Report of Peter J. Hildebrand [Docket 47] is **DENIED**.

34

A separate Judgment Order will be entered this day implementing the rulings contained herein.  The Court **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 28, 2009

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

35